**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **25CR30038-MGM** |
| | ) | |
| **BRIAN SOCHA** | ) | |

**BRIAN SOCHA'S SENTENCING MEMORANDUM**

Brian Socha ("Brian"), through counsel, files the instant sentencing memorandum in support of a request for a sentence below the advisory guideline range. Brian respectfully requests that this Honorable Court exercise its discretion to impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a).

## I. BACKGROUND

Brian Socha grew up in Ware, Massachusetts with his parents in a stable family environment. He graduated from Ware High School. He was the 1998 Class Valedictorian. Brian elected not to attend college but has completed some college courses. He was employed with Country Bank for Savings for several years. He left there and started his own business "White Dog Florist" in Ware, Massachusetts. In 2007 he moved into his girlfriend's house in 2007. In 2008 they were married. Brian's wife is employed at UMass Medical Center in Worcester, Massachusetts as a Vascular Nurse Practitioner with a master's degree. They have no children. In 2010 Brian went to work at the Mass Mutual Credit Union located on State Street in Springfield, Massachusetts in the consumer lending

department. In August of 2017 he applied for and obtained a home equity loan from the Mass Mutual Credit Union. Brian did not have any ownership interest in the home. From February 2018 and November 2023 Brian surreptitiously and periodically raised the credit limit of the loan and lowered its interest rate (approximately 22 times). Brian accessed co-workers' workstations and completed the adjustments on their computers under their names. The credit limit was increased to $995K and the interest rate was generally maintained at 1.99%.

In November of 2023 Mass Mutual Credit Union discovered the home equity loan and all the increases and adjustments made to it. Shortly thereafter Brian confessed to the Vice President of Lending that he made all the adjustments to the loan. He broke down and told them how he accomplished the changes and that things had spiraled out of control. He promised to cooperate in any way he could. He left the Mass Mutual Credit Union thereafter.

Brian and his wife separated in August of 2025. There is currently a pending divorce in the Worcester County Family and Probate Court. Since then, Brian has lived in his parents' home. Brian has been working part-time at a florist shop in Ware, Massachusetts and has been employed as a mail carrier in Brookfield, Massachusetts. He started both jobs in December of 2023 and remains employed today.

Brian became his own worst enemy. He lost control of his life and himself. He was drinking to relieve stress and essentially lost control over everything. He became the Titanic and him sinking with it. See, *Arbuzov, Maxim LCSW Letter dated February 11, 2026., Attached as Exhibit #1*.

From the very beginning of this case Brian has accepted responsibility for his

wrongdoing and is very remorseful for his conduct. He knows that his actions have caused tremendous harm to the victim. He is deeply sorry for his actions and looks forward to expressing remorse at this hearing. He recognizes that his actions are the result of his own conduct. He believed that he was eventually going to continue to make everyone right. He does not offer this explanation as an excuse, but only to show that he his actions were motivated by something in him that defied logic. He has been extremely fortunate to have the continued support of his family and friends. See, *Letters of Support Attached as Exhibits #2 and #3*. He believes that their love and support is undeserving. He has attempted to explain to them how he spiraled down this path and at this time he has reached the lowest point of his existence. Brian only intends to make all possible attempts to survive his punishment and complete his restitution obligations.

## II. LAW AND ARGUMENT

The defendant respectfully asks the Court to impose a sentence consisting of a period of home confinement and a period of three years of supervised release. In seeking a sentence below the applicable advisory guideline range sentence the defendant notes that the United States Sentencing Guidelines, as promulgated by the United States Sentencing Commission, no longer bind federal courts. *United States v. Booker, 543 U.S. 220, 259 (2005)*. Indeed, the United States Supreme Court's landmark *Booker* decision declared the mandatory provisions of the USSG unconstitutional. *Id. Booker*, however, reaffirmed a sentencing court's duty to sentence a defendant in accordance with those provisions of the Sentencing Reform Act specified in 18 U.S.C. §3553(a).

The §3553(a) factors include: (1) the nature and circumstances of the offense and the

history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense. *United States v. Robinson, 433 F.3d 31, 35 (1st Cir. 2005)*. The district court, while not bound by the guidelines, still must consult and consider them when imposing a sentence. *Booker, 543 U.S. at 264*. Courts of appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. See *Id.* The United States Supreme Court clarified post-*Booker* sentencing procedure in *Gall v. United States, 128 S. Ct. 586 (2007)* where the *Gall* Court indicated that when sentencing a defendant,

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*128 S. Ct. at 596-597* (internal citations and quotations omitted).

While the First Circuit has noted that sentencing courts must employ "an increased degree of justification commensurate with an increased degree of variance", from the advisory sentencing guideline range, it has also held that under a post-*Gall* rubric, "there is no stringent mathematical formula that cabins the exercise of the sentencing court's discretion." *United States v, Martin, 520 F.3d 87 (1st Cir. 2008).* Indeed, after *Gall*, the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended, and significantly discretionary. At that point, sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." *Id. At 91-92* (internal citations and quotations omitted) (affirming a 91-month downward deviation from the advisory sentencing guideline range).

**A. Presumption of a Sentence Other than Imprisonment**

At the time of the U.S. Sentencing Commission (USSC) was created in 1984 for the purpose of establishing sentencing guidelines for federal criminal offenses, the Congress issued a series of instructions to the USSC which were intended to inform the guidelines to be established. One such instruction is codified at 28 U.S.C. s 9940) and reads in pertinent part:

> *The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.*

Here, the purposes of sentencing can be met by a period of supervised release and only a sentence of supervised release would be consistent with the rationale of the various departure provisions in the Guidelines and the underlying statute. *United States v. Ribot,* 97 F.Supp.2d 74, 84 (D.Mass. 1999) (downward departure of seven levels justified to preserve

treatment plan). There is no doubt that Mr. Socha is a first-time offender, and his offense is not one of violence.

The defendant does dispute the sentencing guideline range of 27-33 months based upon a total offense level of 18 and a criminal history of I. He does not contest forfeiture and restitution in the amount of $902,541.15.

The Defendant requests this court to consider the frequency that the Court imposes below guideline sentences in fraud cases. Courts often recognize that guidelines for fraud cases often result in extraordinary high sentencing guidelines and are often close to or above ranges for serious acts of violence. The Defendant's PSR guideline of 18 is not that far from manslaughter (USSG § 2A1.3), assault with a firearm causing permeant or life-threatening injury (USSG § 2A2.2), sex abuse (USSG 2A3.1) and sexual offenses involving children (USSG 2G1.3). Courts have routinely imposed sentences of more than one half lower than the sentencing guideline range. See, *United States v Albert Gilner*, 10-CR-10199-DPW (84 month sentence, after trial, with a sentencing guideline range of 168-210 months and a loss of over $5 million); *United States v Audrey Hicks* 11-CR-10404-PBS ( a 40 month sentence of a defendant with a prior criminal history and $2.5 million fraud); *United States v George Perez*, 10-CR-00228-LTS (S.D.N.Y.) the former computer programmer for Bernie Madoff to 30 months for a loss of approximately $17.5 billion); *United States v Feldman*, 04-CR-02520-BTM (S.D. Cal) a 27 month sentence of a woman working as a financial advisor who stole over $4 million from her clients and covering up the theft with false account statements; and most recently; *United States v Charles Erikson,* 16-CR-40010-TSH, this court sentenced the defendant to 24 months for stealing over $3.5 million with sentencing guidelines of 70 -87 months. In consideration of the need to avoid unwarranted sentencing disparities the Court should consider the frequency

that fraud defendants receive significant downward variances. 18 U.S.C. §3553(a)(6).

Brian is 45 years old. He was unfortunately consumed with the obsession by his own hand resulted in his downfall. His conduct was unjustifiable. Subsequent to his misconduct he has been stripped of any ability in the future to return to the professional world he had otherwise done well in during the majority of his adult life. His professional reputation is in ruin and he may never return to it. On July 15, 2025, Brian voluntarily entered into a Consent Prohibition Order with the United States National Credit Union Administration Board essentially disbarring himself from ever working in a financial institution. See, *Socha Consent Prohibition Order, Dated July 15, 2025, Attached as Exhibit #4*. As such Brian has already paid a price for his misconduct. This conviction will forever stain his legacy. He is marked as a felon forever. "Sometimes [courts do not] recognize the anguish and the burden that persons face when called to account, as these men are, for the wrongdoing the committed" *United States v Prosperi*, 686 F.2d 32 (1st Cir, 2012). There is virtually no future opportunity for Brian to hold or possess a position that allows him to have access to the assets of others.

Brian believes, with hard work and diligence, he can overcome future obstacles; he can become productive again, return to some level of respectability, and make amends for his stupidity. Given that he will be a convicted felon who engaged in serious fraud his employment prospects are pretty limited. His present employment may be the best opportunity available to make the victims whole again.

## III. CONCLUSION

The Defendant plead guilty to this offense on August 20, 2025, with a plea agreement under Rule 11(c)(1)(B). The Information was filed on July 7, 2025. Brian, from the beginning, has

taken responsibility for his actions. To the extent possible he has been dealing with the problems that caused this behavior with phycological treatment and counselling. He is intensely committed to surviving this and rejoining society for the remainder of his years. Supervised release after will not be without challenges. Traditional employment will be very limited with this conviction. The ability for him to continue in his current employment is unknown at this time but he is optimistic about his ability to maintain employment.

Given his prospects for rehabilitation, a high degree of certainty that he will not re-offend, his lack of dangerousness to the community Brian would respectfully request this Court accept his request that his sentence of a period of incarceration be served as home confinement followed by three years of supervised release. Should the Court decide to incarcerate him with the Bureau of Prisons it is requested that he be allowed to self-report to the designated facility. He has fully complied with all conditions of release since August 20, 2025.

Respectfully submitted,
BRIAN SOCHA
By and through his attorney,

/s/ Charles E. Dolan

Charles E. Dolan, BBO#546344
Raipher, PC
265 State Street
Springfield, Massachusetts 01103
Tel.: (413) 746-4400
Fax: (413) 746-2816
ced@raipher.com

**Certificate of Service**

I, Charles E. Dolan, hereby certify that on this the 20TH day of February 2026, I have served all parties of record registered with ECF for this matter with a true copy of the foregoing motion by virtue of transmitting the same to the Court via the CM/ECF system.

/s/ Charles E. Dolan
Charles E. Dolan