**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRIAN SOCHA,<br><br><br>Defendant | CRIMINAL No. 25-30038-MGM |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Leah B. Foley, United States Attorney for the District of Massachusetts, and Assistant United States Attorney Caroline Merck, hereby files its sentencing memorandum for the defendant Brian Socha.

The defendant Brian Socha is a convicted felon. He gave up on a promising career in the financial sector, to enter down a path of deceit and fraud, tarnishing the community institution he once served. The government requests a sentence of 24 months in prison, two years of supervised release, a fine of $50,000, restitution and a $100 special assessment; that sentence is sufficient but not greater than necessary to achieve the purposes of 18 U.S.C. § 3553(a).  The defendant faces an advisory sentencing guidelines range of 27 to 33 months based upon a total offense level of 18 and criminal history category of I, as well as supervised release for up to five years.

**SOCHA'S CRIME**

For approximately five years, Socha stole thousands of dollars at a time by posing as his coworkers and supervisors so that he could lower his own HELOC to below market rates and increase the amount he could borrow from his employer. At various times, Socha pretended to be

1

a variety of different MassMutual Federal Credit Union ("MassMutual") employees in order to enter and manipulate the MassMutual computer system. By abusing his position as a loan officer in a smally community credit union, Socha successfully preyed on the trust of his employer (and colleagues) to the tune of almost one million dollars. His actions have undoubtedly eroded workplace trust at all levels within the victim institution as well as the public's trust in small credit unions.

As a loan officer, Socha had the unique tools and access needed to perpetrate this elaborate scheme to defraud. Socha worked for MassMutual for over a decade between October 2012 and November 2023. During his tenure there, Socha's job duties as loan officer involved: (1) analyzing current financial position of members to determine the degree of risk involved in extending credit or lending money, (2) making decisions to approve, deny, or counteroffer, or forward the loan request to higher levels for decision, (3) authorizing release of collateral on existing loans, changes in loan terms, waivers of payments, changes in payment dates, and (4) following current loans to ensure compliance with terms and conditions and aids in collection activities as needed. By virtue of his position, Socha had familiarity with the MassMutual computer system and access to secure areas within the credit union, including the work computers of coworkers and supervisors.

Prior to his decade at MassMutual, Socha reports prior work experience at another financial institution, Country Bank. As a reported high-performer there, he was given praise, promotions and the opportunity for specialized higher education in banking at Babson College. Despite these reported achievements, Socha reportedly stepped away from almost a decade in banking to chase the goal of being a successful entrepreneur.  However, after falling short of profitability during the first 18 months, Socha was not able to realize his dreams of running his

own business. After this disappointment, Socha returned to what he knew and to the relative

stability of a financial services career. After another successful decade, Socha unfortunately once

again veered off from his stable banking career in search of another path to wealth.

## THE GUIDELINES CALCULATION

The government has no objections to the Final PSR and believes that the U.S. Probation

Office accurately calculated Socha's advisory guidelines sentencing range of 27-33 months

based on a total offense level of 18.  The government agrees that the base offense level is 7,

which is increased by 14 levels because the loss was more than $550,000 but less than

$1,500,000.  The government agrees that Socha's offense level should be increased by two levels

for abusing a position of trust.

The government believes that the abuse of position of trust enhancement applies in

accordance with USSG § 3B1.3. This enhancement should apply because the defendant

successfully impersonated his coworkers and supervisors in the MassMutual system to

"significantly facilitate" the "commission and concealment" of his crimes. USSG § 3B1.3.

The defendant used his position as a loan officer to defraud his victim; someone else

without the insider access of a loan officer position would not have been able to successfully

orchestrate the HELOC scheme that the defendant ran.   The defendant accessed and used

internal work stations and systems that an ordinary citizen could not have accessed or used over

twenty times. The defendant was able to make the changes to his HELOC even though he would

not normally be allowed to access and change his own loan.  Moreover, the defendant's

knowledge of how to vary his changes enough to conceal his fraud for a time is another measure

that an ordinary citizen could not have taken in committing a similar fraud scheme. The

defendant adjusted the loan and approved the adjustments using a variety of others accounts, including the account of the then Vice-President of Lending, to conceal his fraud scheme.

The government agrees that Socha is entitled to a three-level of reduction because he has accepted responsibility for her conduct.

## THE 3553(a) FACTORS

a.    The Nature and Circumstances of the Offense Warrant a 24-Month Sentence

Socha's crime is especially egregious because, as set forth in great detail in the PSR, he singlehandedly orchestrated the entire scheme.  He leveraged his position as a loan officer at each stage of the scheme to steal from his employer and conceal his crime for a five-year period.

b.    Socha's History and Characteristics Weigh in Favor of a 24-Month Sentence

Socha's personal characteristics weigh in favor of the requested sentence, which falls at just below the bottom of the defendant's advisory guidelines range. *See* 18 U.S.C. 3553(a)(1). Despite the considerable support, financial stability and opportunities offered by his family and employers, Socha simply gave up on a once promising financial services career to enter down a path of deceit and fraud.

Loan officers are bound by a framework of state and federal laws, regulations, and licensing requirements aimed at ensuring ethical behavior, consumer protection, and financial stability. They have a duty to their employer to act in their institutions' best interest, to ensure accurate information, and to prevent loss. Financial institutions give loan officers a significant level of trust. With such trust, comes great responsibility. Socha enthusiastically took on that responsibility when at the start of his banking career with Country Bank.  He excelled and was offered a place in the Mass Banker's Association financial studies' program.[1] After an

---

[1] According to MassBankers.org, the 2025 program curriculum includes at least one Ethics course.

approximate decade of advancement as a financial services employee, he sought out greater

success by setting up his own business. When that business failed, he returned to the stability of

financial services.

Socha's conduct in this case demonstrates anything but a commitment to state and federal

laws. The timing of this fraud scheme is also indicative of his personal characteristics. Only after

his greater his ambitions of running a successful business failed and his return to a stable banking

career failed to produce the level wealth he desired, did he start trading on workplace access to

line his own pockets.

  c. <u>The Need for a 24 Month Sentence</u>

Lastly, the requested sentence is required "to reflect the seriousness of the offense, to

promote respect for the law, and to provide just punishment for the offense," 18 U.S.C.

§3553(a)(2)(A) and to afford "adequate deterrence to criminal conduct" and to "protect the

public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(2)(B)-(C).

Here, the government's recommended sentence of imprisonment falls at the bottom of the

advisory guidelines range and serves all of these crucial sentencing goals. First, this sentence

reflects the gravity of his offense, which resulted in serious monetary harm to a community

institution, many of its staff and the community it serves.

Next, the sentence is essential to promote respect for the law and is stiff enough to deter

others from similar crimes. Loan officers need to understand that if they engage in such criminal

conduct, they will face stiff penalties.  A stiff penalty deters would-be bad actors from

committing crimes.  In addition, crimes like this erode public faith in small credit unions as well

as the entire financial industry.  Loans are the foundation of every credit union. The manner in

which they are underwritten, documented, maintained, adjusted, and secured is crucial to their

organizational strength and integrity; the role of loan officer plays an integral part. Work in a small community credit union like MassMutual is arguably a higher calling than work in a normal bank. Credit unions are, by design and mission, often heavily focused on serving underrepresented, low-income, and marginalized communities. They are often the primary financial institutions in underserved areas, providing essential, affordable banking services where traditional banks may not operate. They are more generous than traditional banks because they do not have shareholders. Credit union return surplus revenue to members through lower loan rates, higher deposit yields, and fewer fees. They focus on financial wellness over profit. This case has shown that Socha put himself first, completely abandoning the ideals of a community credit union to line his own pockets and defraud an institution that trusted him.

Lastly, the sentence is required to protect the public from further crimes by Socha. Socha repeatedly chose to exploit his secure access and steal from his employer – and the MassMutual community- over a five-year period. Socha cannot "remember what precipitated [his] increase of [the] HELCO for the first time, but it happened and then continued to happen over the [] years again and again." When he was confronted and terminated, Socha "thought it was done" and moved on to another career as a mail carrier for the U.S. Postal Service. Family support, medical support, and professional ethical obligations were not sufficient to stop Socha from committing fraud. Socha's conduct shows that only the stiff penalty of prison time will assure that the public is protected from him preying on them or their institutions through a new fraud scheme. Socha is relatively young and certainly has time to right the ship and become a law abiding, productive member of society. However, time in prison is necessary to get Socha on the right path and assure that he does not return to his fraud schemes.

## CONCLUSION

For those reasons stated above, the government respectfully requests a sentence of 24 months, two years of supervised release, a fine of $50,000, restitution and a special assessment of $100.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

/s/ Caroline Merck
Caroline Merck
Assistant U.S. Attorneys
United States Attorney's Office

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ Caroline Merck
Caroline Merck
Assistant U.S. Attorney

Date: February 23, 2026